# In the United States Court of Federal Claims

No. 15-1232C
Filed: December 5, 2017

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| CHRIS L. PITTMAN, | Air Force Instruction 36-2605, 36-2606, 36-3212; |
| Plaintiff, | Military Pay Act, 37 U.S.C. § 204 (2012); |
| | Military Rules of Evidence ("MRE") 103(a)(1); 301(f)(2)–(3); 317; 401; 403; 404; 615; |
| v. | Rule for Courts-Martial ("RCM") 915; |
| THE UNITED STATES, | Rule of the United States Court of Federal Claims ("RCFC") 52.1(c); |
| Defendant, | Tucker Act Jurisdiction, 28 U.S.C. § 1491 (2012); |
| | Uniform Code of Military Justice, 10 U.S.C. §§ 801–946a (2006). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**John B. Wells**, Military Veterans Advocacy, Inc., Slidell, Louisiana, Counsel for Plaintiff.

**Daniel Herzfeld**, United States Department of Justice, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER RESOLVING CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**BRADEN**, *Chief Judge*.

This case concerns a collateral attack on a special court-martial proceeding, in which Christopher Pittman ("Plaintiff") was convicted of conspiracy and violation of Air Force Instruction 36-2605. Thereafter, Plaintiff was sentenced to a reduction in grade from E-7 to E-5 and three months of hard labor, without confinement. For the reasons discussed herein, the court has determined that there is no basis upon which to order relief.

To facilitate review of this Memorandum Opinion And Final Order Resolving Cross-Motions For Judgment On The Administrative Record, the court has provided the following outline:

I.   FACTUAL BACKGROUND. ............................................................................ 3
     A.   Charges Filed Against Plaintiff For Violations Of The Uniform Code Of Military
          Justice........................................................................................................... 3
     B.   The Special Court-Martial Proceedings. ...................................................... 4
     C.   The Request For Clemency. .......................................................................... 9
     D.   The Judge Advocate's Article 64(a) Review. ............................................. 11
     E.   Plaintiff's Retirement From The Air Force.................................................. 12
     F.   The Judge Advocate General's Article 69(b) Review. ................................ 12

II.  PROCEDURAL HISTORY. ........................................................................... 14

III. DISCUSSION. ................................................................................................ 14
     A.   Jurisdiction. ................................................................................................. 14
     B.   Standing........................................................................................................ 16
     C.   Exhaustion Of Administrative Remedies ..................................................... 17
     D.   Standard Of Review For A Motion For Judgment On The Administrative Record. ..... 17
     E.   The Government's Motion For Judgment On The Administrative Record. .................. 18
          1.  AFI 36-2605 Is Not Void For Vagueness, Nor Overbroad. ................... 18
              a.  The Government's Argument. ........................................................ 18
              b.  Plaintiff's Response. ...................................................................... 19
              c.  The Government's Reply. ............................................................... 20
              d.  The Court's Resolution. ................................................................ 20
          2.  The Court-Martial Was Not Tainted By Prosecutorial Misconduct....................... 21
              a.  The Government's Argument. ........................................................ 21
              b.  Plaintiff's Response. ...................................................................... 22
              c.  The Government's Reply. ............................................................... 23
              d.  The Court's Resolution. ................................................................ 23
          3.  The Military Judge's Remedy For The Alleged Coaching Of Staff Sergeant A Was
              Not In Error. ........................................................................................... 25
              a.  The Government's Argument. ........................................................ 25
              b.  Plaintiff's Response. ...................................................................... 25
              c.  The Government's Reply. ............................................................... 26
              d.  The Court's Resolution. ................................................................ 26
          4.  The Military Judge's Ruling That Video Evidence Should Not Be Suppressed Was
              Not In Error. ........................................................................................... 26
              a.  The Government's Argument. ........................................................ 26
              b.  Plaintiff's Response. ...................................................................... 27
              c.  The Government's Reply. ............................................................... 28
              d.  The Court's Resolution. ................................................................ 29

5. The Military Judge's Ruling Not To Dismiss The Members Venire And Empanel
    A New Venire Or Order A New Trial Was Not In Error. ........................................ 30
    a. The Government's Argument. ........................................................................... 30
    b. Plaintiff's Response. ......................................................................................... 31
    c. The Government's Reply. .................................................................................. 31
    d. The Court's Resolution. .................................................................................... 31
6. The "Cumulative Error Doctrine" Does Not Require That Plaintiff's Conviction
    Be Set Aside And A New Trial Ordered. .................................................................. 33
    a. The Government's Argument. ........................................................................... 33
    b. Plaintiff's Response. ......................................................................................... 33
    c. The Government's Reply. .................................................................................. 33
    d. The Court's Resolution. .................................................................................... 33
7. Plaintiff's Reinstatement Request Is Not Justiciable. ............................................. 34
    a. The Government's Argument. ........................................................................... 34
    b. Plaintiff's Response. ......................................................................................... 35
    c. The Government's Reply. .................................................................................. 35
    d. The Court's Resolution. .................................................................................... 35

IV. CONCLUSION. ................................................................................................................ 36

## I.   FACTUAL BACKGROUND.[1]

### A.   Charges Filed Against Plaintiff For Violations Of The Uniform Code Of Military Justice.

Plaintiff enlisted in the United States Air Force ("Air Force") on November 13, 1987, and entered uniformed service on October 4, 1988. AR Tab 6 at 92. Thereafter, Plaintiff received numerous commendations and meritorious service medals. AR Tab 6 at 92–93. In 2005, after passing the required Weighted Airman Promotion System ("WAPS") test,[2] Plaintiff was promoted to the rank of Master Sergeant (E-7). AR Tab 17 at 331 (WAPS results and promotion).

On October 17, 2007, a Staff Sergeant ("Staff Sergeant A") accused Plaintiff and others of cheating on the 2005 promotion exams, including the WAPS promotion fitness examination

---

[1] The facts discussed herein were derived from the October 22, 2015 Complaint ("Compl.") (ECF No. 1) and the September 1, 2016 Administrative Record ("AR Tabs 1–91" at 1–799) (ECF No. 16 (Sept. 1, 2016 Notice regarding filing of Administrative Record on CD-ROM)).

[2] The WAPS system generally includes a promotion fitness examination ("PFE") and a skills knowledge test ("SKT"). *See generally* U.S. AIR FORCE, AIR FORCE INSTRUCTION 36-2605 (Dec. 21, 2007) ("AFI 36-2605"); *see also* AR Tab 16 at 195 (testimony that the WAPS tests include the PFE and SKT).

("PFE").   AR Tab 23 at 474.   On November 12, 2009, the Air Force Office of Special Investigations ("OSI") issued a Report ("OSI Report").  AR Tab 23 at 471–96.

On January 20, 2009, based on the OSI Report, Plaintiff was charged with cheating on the WAPS PFE. AR Tab 4 at 30–32 (1/20/09 Charge Sheet).  The first charge was for a violation of Uniform Code of Military Justice ("UCMJ") Article 81 (10 U.S.C. § 881 (2006)), and included one specification for conspiracy to possess or distribute controlled WAPS test material.  AR Tab 4 at 30.  The second charge was for a violation of UCMJ Article 92 (10 U.S.C. § 892 (2006)), for failing to obey a general regulation, *i.e.*, Air Force Instruction ("AFI") 36-2605, by wrongfully discussing and sharing WAPS test material with other members of the Air Force.  AR Tab 4 at 30; AR Tab 16 at 133.  The second charge included four additional specifications, based on separate violations of Article 92.  AR Tab 4 at 30, 32.[3]

## B.    The Special Court-Martial Proceedings.

On January 21, 2009, by Special Order, a Brigadier General (the "Convening Authority") convened a special court-martial, pursuant to UCMJ Article 16.[4]  AR Tab 16 at 126; 10 U.S.C. § 816(b).   The Special Order identified a court-martial venire[5] of ten individuals, including a Lieutenant Colonel ("Lt. Col. X").  AR Tab 16 at 126.

On January 27, 2009, Plaintiff was served with the charges.  AR Tab 16 at 127.

On January 30, 2009, the Air Force's Chief Trial Judge set the special court-martial for March 16, 2009, and established a pre-trial schedule.  AR Tab 16 at 127–28.

On March 2, 2009, the Staff Judge Advocate filed a new charge for conspiracy, *i.e.*, Plaintiff conspired with another service member to create a false travel order in violation of UCMJ Article 81.  AR Tab 9 at 100.  The Staff Judge Advocate recommended that the charge be referred

---

[3] A charge is the general offense with which an accused is charged, whereas a specification is the particular instance of offending conduct.  In this case, the first charge is "Violation of the UCMJ, Article 81" and its specification is for conduct occurring from October 1, 2004, to on or about March 31, 2005.  AR Tab 4 at 30.  The second charge, "Violation of the UCMJ, Article 92," included four specifications for conduct occurring between: (1) September 1, 2004, and on or about December 31, 2004; (2) March 1, 2005 and on or about March 31, 2005; (3) May 1, 2005, and on or about July 31, 2005; and (4) May 1, 2006, and on or about September 1, 2006.  AR Tab 4 at 30, 32.

[4] There are three types of courts-martial: (1) general; (2) special; and (3) summary.  *See* 10 U.S.C. § 816 (2006).  Each is distinguished by the number of members comprising the venire and whether a military judge is present.  *See id.*  Generally, a special court-martial consists of no less than three members or a military judge and no less than three members or, in some cases, only a military judge.  *Id.*

[5] A "venire" is a "panel of persons selected for jury duty and from among whom the jurors are to be chosen." *Venire*, BLACK'S LAW DICTIONARY 1789 (10th ed. 2014).

to the special court-martial, at the same time as the January 20, 2009 charges and specifications. AR Tab 9 at 100.

On March 9, 2009, Plaintiff's counsel moved *in limine* to dismiss the case for failure to state an offense, arguing that charges were "derive[d] from the impermissible enforcement of an unlawful, vague, and unconstitutional regulation." AR Tab 30 at 569–70. The motion also asserted that AFI 36-2605 denied Plaintiff's right to freedom of association under the First Amendment to the United States Constitution. AR Tab 30 at 571. On that date, Plaintiff's counsel also filed a motion *in limine* to suppress a video recording of a telephone call by a Technical Sergeant ("Technical Sergeant B"), under Military Rule of Evidence ("MRE") 317, because it was cumulative and not obvious from the recording that Plaintiff was a party to the conversation. AR Tab 34 at 583–88; AR Tab 16 at 144–45.

On March 11, 2009, Plaintiff's counsel moved *in limine* to dismiss the charges "or [grant] other appropriate relief for the improper selection of a court member and unlawful command influence." AR Tab 26 at 548. On that same day, Plaintiff's counsel also moved to dismiss the March 2, 2009 charge regarding the false travel order. AR Tab 31 at 575–76.

From March 16, 2009 to March 20, 2009, a special court-martial was convened at Keesler Air Force Base, Mississippi. AR Tab 16 at 125–329 (summary record of special court-martial proceeding).

On March 16, 2009, the Military Judge began the proceedings by hearing argument on two motions *in limine*.

In addition, on March 16, 2009, the Military Judge considered Plaintiff's motion to dismiss the case for the Staff Judge Advocate's selection of a court-martial member, based on unlawful command influence. AR Tab 16 at 136–37. After the Air Force counsel briefly described the court-martial member selection process, the Military Judge called the Staff Judge Advocate as a witness. AR Tab 16 at 138.

The Staff Judge Advocate testified that, during the special court-martial member selection process, a package was prepared that included: a letter for the Convening Authority's signature; a section for the Convening Authority to select the special court-martial members; information about the prospective members; and "a copy of the [OSI] Report . . . and the endorsement by the [C]ommander." AR Tab 16 at 138–41. The Staff Judge Advocate signed the package "FOR THE COMMANDER." AR Tab 16 at 126.

The Staff Judge Advocate testified also that the scope of her assignment did not require a discussion of UCMJ Article 25,[6] because "[w]e have done this with enough regularity that we haven't needed to reengage on the subject." AR Tab 16 at 139, 141.

---

[6] UCMJ Article 25 provides that commissioned officers on active duty, warrant officers on active duty, and enlisted members of the armed forces on active duty, who are not members of the same unit as the accused, may serve on courts-martial, but that "[w]hen it can be avoided, no

On March 17, 2009, the Military Judge denied Plaintiff's motion to dismiss, based on the Staff Judge Advocate's selection of the court-martial members (AR Tab 16 at 142, 152–54 (summary transcript of ruling on motion); AR Tab 53 at 640–42 (written opinion)), but ruled that the false travel order charge was improper, because Plaintiff was not "on notice that this was a crime." AR Tab 16 at 158–59.

On March 17, 2009, the Military Judge also considered Plaintiff's motion *in limine* to suppress recorded evidence, pursuant to MRE 317. AR Tab 16 at 144–45. Although Plaintiff's counsel conceded during the hearing that MRE 317 was not the correct evidentiary basis, nevertheless he objected under MRE 403, based on relevance and hearsay grounds. AR Tab 16 at 145, 159. The Military Judge sustained the objection. AR Tab 16 at 159–60.

On March 17, 2009, the Military Judge also denied Plaintiff's March 9, 2009 motion *in limine*, challenging AFI 36-2605, ruling that instruction reasonably furthered a military need and was not "unconstitutionally vague[ because i]t clearly explains what conduct [was] prohibited in relation to the WAPS testing in plain English." AR Tab 16 at 155. In particular, the Military Judge ruled that AFI 36-2605 "defines the term 'suspected test material.' It also defines 'illegal test material' and 'actual test material,' so the accused . . . clearly [was] on notice as to what those terms mean." AR Tab 16 at 155. As to the argument that AFI 36-2605 impermissibly interfered with Plaintiff's right to freedom of association under the First Amendment to the United States Constitution, the Military Judge ruled that Plaintiff was free to associate with other service members, but "he was not free to discuss and share test materials or suspected test materials, as defined by the AFI, with other examinees." AR Tab 16 at 155–6.

Following these rulings, Plaintiff pleaded not guilty as to all specifications and charges. AR Tab 16 at 163.

On March 17, 2009, the Air Force counsel also challenged Lt. Col. X for cause, based on statements made during voir dire, suggesting that "group study" should be permitted for the WAPS testing, but clarified that he no longer held that view. AR Tab 16 at 167–71. Then, Air Force counsel challenged Lt. Col. X for cause; Plaintiff's counsel objected. AR Tab 16 at 171. The Military Judge denied the Air Force's challenge. AR Tab 16 at 171. Next, the Air Force counsel peremptorily challenged Lt. Col. X, who was then excused. AR Tab 16 at 172, 174. Thereafter, three other members of the venire also were excused. AR Tab 16 at 174.

On March 18, 2009, the special court-martial continued with opening statements by counsel and witness testimony. AR Tab 16 at 176. Fourteen witnesses testified (AR Tab 16 at 176–296), including four for the Air Force, but only after receiving grants of testimonial immunity and orders to testify.[7] AR Tab 11 at 111–14; AR Tab 16 at 176–265. One witness was Staff

---

member of an armed force may be tried by a court-martial any member of which is junior to him in rank or grade." 10 U.S.C. § 825 (2006).

[7] Three of the witnesses were implicated in the WAPS test incident at Keesler Air Force Base. AR Tab 16 at 133–35 (charge sheet with specifications naming the witnesses). Staff Sergeant A was court-martialed, but the other two witnesses only received administrative

Sergeant A, who identified study materials introduced as evidence by the Air Force as the same as those she provided Plaintiff to prepare for the 2005 WAPS testing.  AR Tab 16 at 250–51.  On cross examination, however, Staff Sergeant A testified that she had identified the wrong materials, because those materials were dated July 1, 2005, and the alleged misconduct occurred in March 2005.  AR Tab 16 at 256–57.  On redirect, Staff Sergeant A corrected her prior testimony, explaining that, after her direct testimony, she reviewed the materials that she identified and realized the mistake.  AR Tab 16 at 260–65.

After Staff Sergeant A's redirect, Plaintiff's counsel requested an Article 39(a) session.[8] AR Tab 16 at 261.  Thereafter, Plaintiff's counsel moved for a mistrial, on the grounds that witnesses were not permitted to confer between direct and cross examination, but Staff Sergeant A was coached between her cross-examination and redirect testimony.  AR Tab 16 at 263.  The Military Judge denied the motion for a mistrial.  AR Tab 16 at 263.

On March 18, 2009, the Air Force offered into evidence a video of Technical Sergeant B talking on the telephone after an interview with OSI, and a transcript thereof.  AR Tab 16 at 225. Plaintiff's counsel objected, because admitting that evidence contravened the Military Judge's prior ruling suppressing the video on hearsay grounds, and the fact that no character evidence was allowed to be proffered on cross-examination, and the evidence was cumulative.  AR Tab 16 at 225.  The Military Judge overruled Plaintiff's counsel's objection to the video, but sustained the objection to the transcript.  AR Tab 16 at 226.  The Military Judge also instructed the special court-martial members that the video "was offered and admitted as corroboration of a conversation [Technical Sergeant B] maintains he had with [Plaintiff] and it was not admitted for the truth of the matter asserted."  AR Tab 16 at 227.

On March 19, 2009, the special court-martial members found Plaintiff guilty of Charge 1 (conspiracy to violate AFI 36-2605) and its specification, and of three of the four specifications of Charge 2 for failing to obey Air Force Instruction 36-2605.  AR Tab 16 at 305.  Plaintiff, however,

---

punishment, under UCMJ Article 15 (non-judicial punishment that may be imposed without convening a court-martial).  AR Tab 11 at 111–13.

[8] An Article 39(a) session is a part of the court-martial proceeding that is held outside the presence of the court-martial members.  *See* 10 U.S.C. § 839(a) (2006).  The purpose of an Article 39(a) session is to allow the Military Judge to rule on certain motions, hear pleas, and perform other procedural functions that do not require the presence of the members.  *See id.*  In this case, the summary record of the special court-martial proceeding did not include any record about what was discussed during the Article 39(a) session.  For example, the summary record states that the Article 39(a) session was held in the presence of the Military Judge and counsel, wherein Plaintiff's counsel moved for a mistrial and argument was heard, but the Military Judge denied the motion. AR Tab 16 at 263.  The summary record, however, provided no verbatim detail about the proceeding, only that "[t]he defense counsel moved for a mistrial and stated that between direct examination and cross-examination the witness is not supposed to talk to anybody and she did in this case[,]" and that counsel argued their respective positions on the motion.  AR Tab 16 at 263.

was found not guilty on the remaining specification (for conduct occurring from March 1, 2005, to on or about March 31, 2005).  AR Tab 16 at 305; *see also* AR Tab 4 at 30.

On March 20, 2009, the special court-martial members sentenced Plaintiff to a reduction in grade from E-7 to E-5 and three months of hard labor, without confinement.  AR Tab 16 at 322. Because of the sentence, Plaintiff had no right to appeal to the Air Force Court of Criminal Appeals.  *See* 10 U.S.C. § 866(b) (2006).[9] Since Plaintiff had no right to appeal to the Air Force Court of Criminal Appeals, he also had no right to appeal to the United States Court of Appeals for the Armed Forces.  *See* 10 U.S.C. § 867(a) (2006).[10]

---

[9] UCMJ Article 66(b) provides:

(b) The Judge Advocate General shall refer to a Court of Criminal Appeals the record in each case of trial by court-martial—
    (1) in which the sentence, as approved, extends to death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable or bad-conduct discharge, or confinement of one year or more; and
    (2) except in the case of a sentence extending to death, the right to appellate review has not been waived or an appeal has not been withdrawn under . . . [Article 61].

10 U.S.C. § 866(b) (2006).
UCMJ Article 19, however, prohibits a special court-martial from imposing the sentences outlined in Article 66(b)(1).  *See* 10 U.S.C. § 819 (2006).  Therefore, as a matter of law, a sentence imposed by a special court-martial, other than those outlined in Article 66(b)(1), cannot be appealed to the Air Force Court of Criminal Appeals.

[10] UCMJ Article 67(a) provides:

(a) The Court of Appeals for the Armed Forces shall review the record in—
    (1) all cases in which the sentence, as affirmed by a Court of Criminal Appeals, extends to death;
    (2) all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces for review; and
    (3) all cases reviewed by a Court of Criminal Appeals in which, upon petition of the accused and on good cause shown, the Court of Appeals for the Armed Forces has granted a review.

10 U.S.C. § 867(a) (2006).

The following flowchart, derived from the information contained in a Post-Trial and Appellate Rights Advisement provided to Plaintiff by his counsel prior to trial, shows the review and appeal procedure from a special court-martial:



AR Tab 88 at 755–60.

## C.   The Request For Clemency.

On March 30, 2009, Plaintiff submitted a request for clemency for referral to the Convening Authority, because the special court-martial conviction and sentence should be set aside and non-judicial punishment should be imposed under UCMJ Article 15.[11]  AR Tab 4 at 17–88; *see also* UCMJ Article 60, 10 U.S.C. § 860 (2006).[12]  First, the clemency request stated that

---

[11] UCMJ Article 15 permits a Commanding Officer, "in addition to or in lieu of admonition or reprimand, [to] impose one or more of [a number of] disciplinary punishments for minor offenses without the intervention of a court-martial[.]"  10 U.S.C. § 815 (2006).

[12] UCMJ Article 60 also provides, in relevant part:

the Air Force's witnesses were granted immunity or otherwise received an Article 15 punishment, but Plaintiff's sentence was not commensurate with that imposed on those witnesses.  AR Tab 4 at 19–20.  Second, there was an appearance of prosecutorial misconduct, because the Staff Judge Advocate improperly acted like trial counsel, as "she was in the front row of the gallery sitting directly behind the trial counsel table on three out of the five days . . . [and] passed notes to the trial counsel while court was in session during witness examinations." AR Tab 4 at 17.  In addition, "[a]lthough no one is alleging any actual wrongdoing on the part of [the Staff Judge Advocate], her actions in court do present the appearance of assisting trial counsel during trial and we would therefore request that another legal office provide you with post-trial advice[,] if this case is not downgraded to an Article 15." AR Tab 4 at 17–18.  The clemency request also discussed Plaintiff's health and the adverse financial impact the court-martial sentence would have, if Plaintiff were retired from the Air Force for disability.[13]  AR Tab 4 at 21.

---

(b)(1) The accused may submit to the convening authority matters for consideration by the convening authority with respect to the findings and the sentence.  Any such submission shall be made in writing.  Except in a summary court-martial case, such a submission shall be made within 10 days after the accused has been given an authenticated record of trial and, if applicable, the recommendation of the staff judge advocate or legal officer under subsection (d).  In a summary court-martial case, such a submission shall be made within seven days after the sentence is announced.

* * *

(c)(2) Action on the sentence of a court-martial shall be taken by the convening authority or by another person authorized to act under this section.  Subject to regulations of the Secretary concerned, such action may be taken only after consideration of any matters submitted by the accused under subsection (b) or after the time for submitting such matters expires, whichever is earlier.  The convening authority or other person taking such action, in his sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part.

 (3) Action on the findings of a court-martial by the convening authority or other person acting on the sentence is not required.  However, such person, in his sole discretion, may—
(A) dismiss any charge or specification by setting aside a finding of guilty thereto; or
(B) change a finding of guilty to a charge or specification to a finding of guilty to an offense that is a lesser included offense of the offense stated in the charge or specification.

10 U.S.C. § 860(b)(1), (c)(2)–(3) (2006).

[13]  In September 2008, prior to the special court-martial, Plaintiff was examined by a Medical Evaluation Board, following reports of asthma, dyspnea on exertion, and wheezing during exercise over the prior ten months.  AR Tab 4 at 74–75.  Plaintiff's last Enlisted Performance Report, issued prior to the court-martial proceeding, indicated that he did not meet the physical

On April 2, 2009, the Staff Judge Advocate submitted the clemency request, together with a recommendation, for the Convening Authority's review.  AR Tab 4 at 11.

On April 4, 2009, the Convening Authority rejected Plaintiff's clemency request and approved the special court-martial conviction and sentence.  AR Tab 16 at 327 (4/4/09 Action of the Convening Authority).   On that same date, the Convening Authority also signed a memorandum stating that it "considered the attachments [to the clemency request] before taking action on [the] case."  AR Tab 4 at 12.

### D.    The Judge Advocate's Article 64(a) Review.

On April 30, 2009, the Judge Advocate completed an Article 64(a) review[14] and concluded that the court-martial had jurisdiction over Plaintiff, who was convicted of actual offenses, and his sentence was lawful.  AR Tab 3 at 3–10.[15]

---

fitness standards required for Air Force service.  AR Tab 18 at 356 (Enlisted Performance Report for 11/16/07 to 11/15/08).   Failure to meet physical fitness standards can result in a medical separation from the military.  *See* AIR FORCE INSTRUCTION 36-3212 ¶ 1.1 (Dec. 21, 2007).   But, retirement benefits, including any disability benefits, are based upon creditable service and the grade in which a serviceman retires.  *See id.* ¶¶ 5.14–5.15.  Because Plaintiff's sentence included a reduction in grade from E-7 to E-5, it would adversely affect his retirement benefits, when and if he were to be retired for disability.

[14] An Article 64(a) review occurs in certain courts-martial, where the accused is found guilty.  *See* 10 U.S.C. § 864(a) (2006).   In those proceedings, the Judge Advocate reviews the record to determine whether: (1) the military court had jurisdiction over the accused and the offense; (2) the charge and specification stated an offense of which the accused could be convicted; and (3) the sentence was within prescribed limits.  *Id.*  The Judge Advocate also is required to provide a written conclusion regarding each of these issues and respond to each allegation of error made in writing by the accused.  *Id.*  In this case, the Administrative Record does not reflect that Plaintiff made any written allegations of error for the purposes of the Article 64(a) review.  Therefore, the Judge Advocate's review does not contain any written conclusions about specific allegations of error.

[15] The Administrative Record includes four copies of the first and third pages of Special Court-Martial Order No. 4, on each of which was typed the following:

Article 64(a), UCMJ, Review:
I conclude:
(a) the court-martial had jurisdiction over the accused and each offense as to which there is a finding of guilty which has not been disapproved;
(b) each specification as to which there is a finding of guilty which has not been disapproved stated an offense; and                 DATE: APR 30 2009
(c) the sentence is legal.
HEADQUARTERS SECOND AIR FORCE (AETC)
[Judge Advocate's signature and name]

### E.      Plaintiff's Retirement From The Air Force.

On October 26, 2009, Plaintiff was retired from the Air Force, for disability, at the grade of E-5.  Compl. ¶ 35.  On that date, Plaintiff had served in the Air Force for 21 years and 23 days. Compl. ¶ 35.

### F.      The Judge Advocate General's Article 69(b) Review.

On March 28, 2011, Plaintiff petitioned the Judge Advocate General for a UCMJ Article 69(b) review,[16] and for a new trial, under UCMJ Article 73.[17]  AR Tab 89.  The petition cited the following seven issues for review, including those raised in the motions *in limine* that were filed prior to and during the special court-martial and a request for clemency.  AR Tab 89 at 767.

First, AFI 36-2605 does not comport with law, because "[t]here is no articulable military need for this instruction" and it "lacks the required specificity to ensure that it is not unconstitutionally vague [or] overly broad."  AR Tab 89 at 769.  Specifically, AFI 36-2605 does not define "suspected controlled Weighted Airman Promotion System testing material," so Plaintiff could not possibly know what would constitute an offense.  AR Tab 89 at 771.

Second, Plaintiff's conviction should be set aside or, in the alternative, he should be granted a new trial, based on a post-trial Defense Computer Forensic Laboratory report analyzing a file from a witness's ("Technical Sergeant D") computer showing "what appear[ed] to be questions and answers that may be related to the [WAPS tests]."  AR Tab 89 at 776.  Therefore, the file permissions listing Technical Sergeant D as the file's owner, suggested that Plaintiff did not create the file and, contrary to court-martial testimony, Technical Sergeant D did not delete the file.  AR Tab 89 at 776–77.

---

Judge Advocate

AR Tab 3 at 3, 5, 7, 9.
Although the four copies are numbered sequentially, none of the copies includes the second page of the Special Order, that presumably includes other offenses for which Plaintiff was convicted.  However, the same language quoted above, signaling the Judge Advocate's review, is also found on the cover page of the summary record of trial.  AR Tab 1 at 1.  Because the charge sheet also was included in the summary record, this indicates the information missing from AR Tab 3 was otherwise available to the Judge Advocate during his review.

[16] An Article 69(b) review is available for summary and special courts-martial and some general courts-martial that are not reviewed under other provisions of the UCMJ.  10 U.S.C. § 869(b) (2006).  The review allows the Judge Advocate General an opportunity to review and modify or set aside a conviction and/or sentence, in whole or in part, "on the ground of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, error prejudicial to the substantial rights of the accused, or the appropriateness of the sentence."  *Id.*

[17] UCMJ Article 73 permits the accused to petition the Judge Advocate General for a new trial "on the grounds of newly discovered evidence or fraud on the court."  10 U.S.C. § 873 (2006).

Third, the Staff Judge Advocate improperly and "actually signed the convening authority's action on behalf of the Commander and forwarded the matter to the convening authority[,]" and "'coached' the Trial Counsel during the trial, [by] providing adversarial advice to the Trial Counsel team." AR Tab 89 at 777. Therefore, the Staff Judge Advocate acted as a "*de facto*" member of the prosecution. AR Tab 89 at 778. In addition, "[d]uring a break in the testimony, [Staff Sergeant A] was taken aside by the trial counsel and coached[,]" rendering the Military Judge's denial of Plaintiff's motion for mistrial erroneous. AR Tab 89 at 778.

Fourth, the video recording admitted under MRE 404 should have been suppressed, because the Military Judge admitted the video after determining it was relevant to show consciousness of guilt, but the criteria for admission set forth under *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989),[18] were not met. AR Tab 89 at 779–80. Nor did the video show Plaintiff requesting an attorney to obstruct justice, because it showed any request for an attorney was made by Technical Sergeant B, not Plaintiff. AR Tab 89 at 780.

Fifth, the court-martial venire should have been dismissed and a new trial ordered, because certain members, including Lt. Col. X, discussed the merits of the case prior to deliberations. AR Tab 89 at 781–82. Consequently, Lt. Col. X was challenged for cause, and then peremptorily dismissed, so there was "a disquieting effect on the remaining members," who could reasonably believe that the court was signaling the other members "to find that the [testing] system was fair," even though fairness was a question for the trier of fact. AR Tab 89 at 782. The proper course would have been to dismiss all of the members and order another venire or a new trial. AR Tab 89 at 782.

Sixth, if the Judge Advocate General determines that the aforementioned issues are insufficient to reverse or otherwise set aside the conviction, the "cumulative error doctrine" demands that the conviction and sentence be set aside. AR Tab 89 at 782–83.

Seventh, the other individuals involved in the alleged conspiracy were given "much lighter" and disparate sentences, but Plaintiff was sentenced more severely, receiving a "two grade reduction and hard labor without confinement." AR Tab 89 at 783–84. Since the sentence was excessive, the Judge Advocate General should set aside the conviction and order a new trial. AR Tab 89 at 784.

Sometime in late 2011, Plaintiff submitted a supplemental brief in support of the petition for an Article 69(b) review or a new trial under Article 73. AR Tab 90 (undated supplemental brief reflecting that "it has been over seven months since the [Article 69 petition] was docketed"). The delay "seem[ed] to have resulted from the record of trial being misplaced," therefore the supplemental brief addressed two additional issues: (1) whether the court-martial conviction could

---

[18] That case held that, when the prosecution seeks to introduce evidence of uncharged misconduct, admissibility is determined by a balancing of: (1) whether the evidence reasonably supports a finding that the accused committed prior crimes, wrongs, or acts; (2) whether the evidence is relevant, under MRE 401; and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, under MRE 403. *See Reynolds*, 29 M.J. at 109.

be affirmed, without the original record of trial; and (2) whether the allegedly unreasonable post-trial delay deprived Plaintiff of due process.  AR Tab 90 at 795.

Thereafter, the Judge Advocate General issued a final decision, determining that the "record of trial has been examined[,] pursuant to Article 69(b) . . . and Article 73[.]"  AR Tab 91 at 799 (undated decision of Judge Advocate General).  Having considered the record, as well as "newly discovered evidence," *i.e.*, the computer forensics report, the Judge Advocate General set aside the finding of guilty as to one specification of Charge II, but otherwise affirmed the conviction and sentence.  AR Tab 91 at 799.  The Judge Advocate General also declined to order a new trial, "as doing so would not probably produce a substantially more favorable result for the applicant."  AR Tab 91 at 799.

## II.    PROCEDURAL HISTORY.

On October 22, 2015, Plaintiff filed a Complaint in the United States Court of Federal Claims, alleging that the Government violated his constitutional rights and improperly withheld pay and allowances owed, while he was on active duty and during retirement.  ECF No. 1 at 1 (Compl. ¶ 2).  The Complaint also alleges that: (1) AFI 36-2605 is overbroad and void for vagueness (Compl. ¶¶ 41–46); (2) the court-martial was tainted by prosecutorial misconduct (Compl. ¶¶ 47–56); (3) the video evidence admitted should have been suppressed, and the failure to do so resulted in an unconstitutional conviction (Compl. ¶¶ 57–65); (4) the court-martial members venire should have been dismissed and a new trial ordered, because the members discussed the merits prior to deliberations (Compl. ¶¶ 66–74); and (5) the "cumulative error doctrine" requires the vacating of Plaintiff's conviction and sentence (Compl. ¶¶ 75–77).

On October 21, 2016, the Government filed a Motion For Judgment On The Administrative Record, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 52.1(c).  ECF No. 21 ("Gov't Mot.").  The October 21, 2016 Motion also included a sealed appendix ("Gov't App.").  ECF No. 21.

On February 21, 2017, Plaintiff filed a Response to the Government's October 21, 2016 Motion and a Cross-Motion For Judgment On the Administrative Record.  ECF No. 32 ("Pl. Resp.").

On May 3, 2017, the Government filed a Response to Plaintiff's February 21, 2017 Cross-Motion and Reply in support of its October 21, 2016 Motion.  ECF No. 38 ("Gov't Reply.").

On August 16, 2017, Plaintiff filed a Reply to the Government's May 3, 2017 Response.  ECF No. 45 ("Pl. Reply").

## III.    DISCUSSION.

### A.    Jurisdiction.

Although the judgments by courts-martial are "not subject to direct review by federal civil courts, [such judgments] may nevertheless be subject to narrow collateral attack in such courts on constitutional grounds[,] if the action is otherwise within a court's jurisdiction[.]" *Bowling v. United States*, 713 F.2d 1558, 1560 (Fed. Cir. 1983).  The United States Court of Federal Claims

has jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2012), "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act also provides that, to afford complete relief, "the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2) (2012). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400. And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

In this case, the October 22, 2015 Complaint alleges that Plaintiff is owed back pay under the Military Pay Act, 37 U.S.C. § 204 (2012). Compl. ¶ 2. That Act provides that a member of a uniformed service who is on active duty is "entitled to the basic pay grade to which [that member is] assigned[.]" 37 U.S.C. § 204(a) (2012). Back pay has been held to be money-mandating under the Tucker Act. *See Matias v. United States*, 923 F.2d 821, 823 (Fed. Cir. 1990) ("[Plaintiff] seeks correction of his military records and back pay. Both of these issues fall squarely within the Claims Court's Tucker Act jurisdiction.").

The United States Court of Federal Claims has jurisdiction, to review collateral attack on a court-martial proceeding, only where the Military Pay Act claims arose from a conviction in a court-martial that suffered severe constitutional defects. *See Bowling*, 713 F.2d at 1560–61 ("In a careful and exhaustive opinion, . . . the Claims Court reviewed the applicable law and correctly held that judgments by courts-martial, although not subject to direct review by federal civil courts,

may nevertheless be subject to narrow collateral attack in such courts on constitutional grounds if the action is otherwise within the court's jurisdiction.").[19]

In this case, the October 22, 2015 Complaint alleges that the special court-martial proceeding was a fundamentally unfair trial, and the admission of certain evidence violated the First and Fifth Amendments to the United States Constitution. Compl. ¶ 77. These errors require restoration in the form of "pay and allowances and benefits for the grade of E-7 commensurate with [Plaintiff's] time in service, retroactive to the effective date of [Plaintiff's sentence,]" as well as correction of military records and reinstatement to active duty, incidental to the monetary claim. Compl. ¶ 77.

A six-year statute of limitations applies to any claim filed in the United States Court of Federal Claims, that commences when the claim first accrues. *See* 28 U.S.C. § 2501 (2012). The United States Court of Federal Claims construes claims for back pay, based on wrongful discharge, as accruing on the date of discharge. *See Young v. United States*, 529 F.3d 1380, 1383, 1385 (Fed. Cir. 2008). Plaintiff's date of discharge was October 26, 2009. Compl. ¶ 35. The Complaint in this case was filed on October 22, 2015. ECF No. 1.

For these reasons, the court has determined that it has jurisdiction to adjudicate the back pay claims alleged in the October 22, 2015 Complaint.

## B.     Standing.

Constitutional standing is a "threshold jurisdictional issue." *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). Although the requirements of constitutional standing are derived from Article III of the United States Constitution, those requirements also apply to the United States Court of Federal Claims. *See Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III.").

To establish standing, a plaintiff must show that he or she suffered, "an injury-in-fact that is both fairly traceable to the challenged conduct of the defendant and likely redressable by a favorable judicial decision." *Figueroa v. United States*, 466 F.3d 1023, 1029 (Fed. Cir. 2006). The party invoking jurisdiction, bears the burden of establishing constitutional standing. *See Myers Investigative*, 275 F.3d at 1369 ("[T]he party invoking federal jurisdiction bears the burden of establishing [its] elements.").

---

[19] This is an exception to the ordinary rule that the United States Court of Federal Claims does not have jurisdiction over due process claims under the Fifth and Fourteenth Amendments to the United States Constitution, because they are not money-mandating within the meaning of the Tucker Act. *See, e.g.*, *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) ("[Plaintiff's] complaint included counts alleging violation of his rights under the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and the doctrine of separation of powers. None of these is a sufficient basis for jurisdiction because they do not mandate payment of money by the government.").

In this case, the October 22, 2015 Complaint alleges that the Air Force withheld money Plaintiff is due under the Military Pay Act and a favorable decision by the court would allow Plaintiff to recover that back pay owed. Therefore, the October 22, 2015 Complaint properly alleges that Plaintiff suffered an injury-in-fact traceable to the challenged court-martial that can be redressed by a favorable decision by the United States Court of Federal Claims.

For these reasons, the court has determined that Plaintiff has standing to seek an adjudication of the back pay claims alleged in the October 22, 2015 Complaint.

### C.   Exhaustion Of Administrative Remedies.

The general rule is that, "before seeking to collaterally attack [a] court martial conviction in the civilian courts, [the plaintiff] must have exhausted all remedies available to him within the military." *Williams v. Sec. of Navy*, 787 F.2d 552, 558 (Fed. Cir. 1986) (citing *Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975)). This requirement applies regardless of whether Plaintiff "alleges violation of the Constitution, statutes, or military regulations." *Id.*

In this case, Plaintiff has utilized all available avenues for review and appeal of his conviction and sentence within the military justice system. Plaintiff submitted a request for clemency to the Convening Authority, that was denied. AR Tab 4 at 17–88; AR Tab 16 at 327. The Judge Advocate conducted an Article 64(a) review of Plaintiff's court-martial and denied relief. AR Tab 3 at 3–10. Thereafter, Plaintiff requested an Article 69(b) and Article 73 review by the Judge Advocate General, that both were denied. AR Tab 89; AR Tab 91. Under UCMJ Article 66, Plaintiff cannot appeal to the Air Force Court of Criminal Appeals, because he received a lesser sentence than can be appealed to that court. *See* 10 U.S.C. § 866 (2006).[20] Consequently, Plaintiff also cannot file an appeal to the United States Court of Appeals for the Armed Forces or petition for certiorari to the United States Supreme Court.

For these reasons, the court has determined that Plaintiff exhausted all available administrative remedies before filing the October 22, 2015 Complaint in this case.

### D.   Standard Of Review For A Motion For Judgment On The Administrative Record.

On a motion for judgment on the administrative record, "[t]he standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases. The rule does not address those standards or criteria." RCFC 52.1(c) Rules Committee's Note to 2006 adoption.

When a Complaint collaterally attacks a court-martial conviction in the United States Court of Federal Claims, the court's review is extremely narrow and limited to claims arising from a court-martial that suffered substantial constitutional defects. *See Bowling*, 713 F.2d at 1560–61 ("This is true notwithstanding the fact that Article 76 of the UCMJ, 10 U.S.C. § 876, expressly states that all dismissals and discharges under sentences by courts-martial following approval, review, or affirmation are final and conclusive.") But, "the constitutional claims must be serious

---

[20] *See supra* note 9.

ones to support an exception to the rule of finality. They must demonstrate convincingly that in the court-martial proceedings there has been such a deprivation of fundamental fairness as to impair due process." *Id.* at 1561. The United States Supreme Court has held that, "apart from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten . . . that the proceeding is more a spectacle . . . or trial by ordeal . . . than a disciplined contest." *United States v. Augenblick*, 393 U.S. 348, 356 (1969) (citations omitted). Therefore, the court's "limited function [is] to determine whether the military tribunal gave fair consideration to each of [Plaintiff's] claims." *Matias*, 923 F.2d at 826.

### E.     The Government's Motion For Judgment On The Administrative Record.

In sum, the Government argues that Plaintiff was not deprived of a fundamentally fair trial nor of constitutional due process rights, because each issue now raised as a collateral attack on the court-martial was fully briefed and argued in the military justice system. Gov't Mot. at 11 (citing *Matias*, 19 Cl. Ct. 635, 646 (Cl. Ct. 1990), *aff'd*, 923 F.2d 821 (Fed. Cir. 1990) ("When an issue has been briefed and argued before a military court, it has received full and fair consideration, even if that court disposes of the claim summarily with a statement that it did not consider the issue meritorious or requiring discussion.").

In this case, five of the issues that Plaintiff has raised were presented in the clemency request to the Convening Authority, before the Judge Advocate, or the Judge Advocate General. Gov't Mot. at 12. Therefore, Plaintiff has received full and fair consideration of the issues or failed timely to raise them. Gov't Mot. at 12. Even if the court agrees that Plaintiff's arguments were not fully and fairly considered, nevertheless the court "should not re-weigh the facts" and only may permit collateral attack on the conviction if it determines that the military rulings were so unfair as to constitute a significant deprivation of Plaintiff's constitutional rights. Gov't Mot. at 12–13.

### 1.     AFI 36-2605 Is Not Void For Vagueness, Nor Overbroad.

#### a.     The Government's Argument.

Plaintiff first contended in a March 9, 2009 motion *in limine* that AFI 36-2605 was unconstitutionally vague or overbroad. AR Tab 30 at 569–71 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.")). On March 11, 2009, the Air Force disagreed, because that instruction provided that "Air Force members cannot cheat." Gov't Mot. at 4 (citing AR Tab 30 at 570–71; AR Tab 31 at 576 (citing *Parker v. Levy*, 417 U.S. 733, 757 (1974) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged.") (citations and quotation marks omitted))). The Military Judge ruled that AFI 36-2605 was "not unconstitutionally vague[ because i]t clearly explains what conduct is prohibited in relation to the WAPS testing in plain English" and specifically defines "actual test material" and "suspected test material." AR Tab 16 at 155. Plaintiff also raised this argument in his March 28, 2011 appeal to the Judge Advocate General, who also rejected it. AR

Tab 89 at 768–75; AR Tab 91 at 799.  Therefore, Plaintiff received "full and fair consideration of his contentions [regarding AFI 36-2605] and [the] collateral attack should be denied on this basis alone."  Gov't Mot. at 13 (citing AR Tab 91 at 799) (Judge Advocate General decision declining to order relief on any ground other than the newly discovered evidence).

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994) (internal citations and quotations omitted); *see also Cooper v. United States*, 20 Cl. Ct. 770, 775 (Cl. Ct. 1990) ("A statute is not void for vagueness when it requires a person to conform his conduct to an imprecise but comprehensible normative standard; it is void for vagueness when no standard of conduct is specified at all.").  AFI 36-2605 provides that violating paragraph 5.9 can subject a service member to criminal prosecution: "Failure to observe prohibitions and mandatory provisions in paragraph . . . 5.9 . . . is a violation of Article 92, Uniform Code of Military Justice[.]"  Gov't Mot. at 14 (citing AR Tab 17 at 335).  The Government contends that "[a] reasonable person should understand that these provisions prohibit Air Force service members from accessing and sharing actual or suspected test material."  Gov't Mot. at 15.  And, "[c]onsistent with the definition of 'suspected test material,'" Plaintiff was charged with conspiracy and improperly sharing highlighted and other test material with Staff Sergeant A and others.  AR Tab 16 at 133–35 (charge sheet); *see also, e.g.*, AR Tab 16 at 246 (Staff Sergeant A's testimony that she received highlighted test materials from Plaintiff that also included handwritten notes).

Nor is AFI 36-2605 overbroad.  "A general order or regulation is lawful unless it is contrary to the Constitution, the laws of the United States, or lawful superior orders or for some other reason is beyond the authority of the official issuing it."  U.S. DEP'T OF DEF., MANUAL FOR COURTS-MARTIAL, Part IV, ¶ 16.c(1)(c) (2008).  As a matter of law, an order is presumed to be lawful and that may be overcome only when a plaintiff shows at least one of the following three requirements is not met: "(1) issuance by competent authority—a person authorized by applicable law to give such an order; (2) communication of words that express a specific mandate to do or not do a specific act; and (3) relationship of the mandate to a military duty." *United States v. Deisher*, 61 M.J. 313, 317 (C.A.A.F. 2005).  The Secretary of the Air Force issued AFI 36-2605, pursuant to 10 U.S.C. § 8013(g)(1), authorizing that the Secretary "[m]ay assign, detail, and prescribe the duties of members of the Air Force and civilian personnel of the Department of the Air Force[.]"  Gov't Mot. at 16.  The purpose of AFI 36-2605 is to prohibit service members from sharing or discussing actual or suspected test material, because there is a clear military duty and need to "identify the right person for the right job [and] select and classify individuals and assess their skills and knowledge in various areas."  AFI 36-2605 ¶ 1.1; AR Tab 17 at 341–42.  Since all three requirements are met, AFI 36-2605 is not overbroad.  Gov't Mot. at 16–17.

### b.    Plaintiff's Response.

Plaintiff responds that AFI 36-2605 is overbroad and void for vagueness, so that Plaintiff's conviction cannot stand.  Pl. Resp. at 11.  Moreover, because no military court determined the constitutionality of AFI 36-2605, this court must review its validity as a matter of law *de novo*.  Pl. Resp. at 11.

For an order or regulation to be lawful, three conditions must be met, *i.e.*, the order or regulation must be (1) "reasonably in furtherance of or connected to military needs (*e.g.*, promotes morale, discipline and usefulness of command)," (2) "specific as to time and place and definite and certain in describing the act or thing to be done or omitted," and (3) "not . . . contrary to established law or regulation." Pl. Resp. at 11–12 (citing *United States v. Wine*, 28 M.J. 688, 690–91 (A.F.C.M.R. 1989); *see also* U.S. DEP'T OF DEF., MANUAL FOR COURTS-MARTIAL, Part IV ¶ 14.c(2)(a)) (2008). Plaintiff argues that "there is no articulated military need for this instruction" and the prohibition against sharing "suspected" testing material does not serve any military purpose. Pl. Resp. at 12. As a matter of policy, other military services promote the sharing of knowledge in preparing officers and enlisted personnel for advancement. Pl. Resp. at 12.

In addition, there is no precise definition of "suspected controlled Weighted Airman Promotion System testing material." Pl. Resp. at 14. Therefore, Plaintiff could not possibly know that distribution of the material fit this category and, since this regulation is so broad, the Air Force can define "suspected" test material to be anything. Pl. Resp. at 14.

Moreover, AFI 36-2605 impermissibly interferes with Plaintiff's First Amendment rights to freedom of speech and association, because "[p]rohibiting innocuous study groups . . . fall[s] short of [the] legitimate use of military authority." Pl. Resp. at 16. In short, "the AFI is wholly unconstitutional by interfering with [Plaintiff's] core freedoms as an American." Pl. Resp. at 18.

### c.    The Government's Reply.

The Government also notes that, during the court-martial, Plaintiff did not contest whether the Air Force Instruction served a military need. Gov't Reply at 11.

### d.    The Court's Resolution.

At each stage of the special court-martial and subsequent reviews, Plaintiff's argument that AFI 36-2605 was constitutionally flawed was rejected as without merit. During the court-martial, the Military Judge carefully analyzed the text and definitions of terms contained in AFI 36-2605, concluding that there was no merit to Plaintiff's argument that he did not "know what [he was] defending against" and that AFI 36-2605 was not unconstitutionally vague, because it "clearly explains what conduct is prohibited in relation to the WAPS testing in plain English." AR Tab 16 at 155. In addition, the instruction specifically defined "suspected test material," "illegal test material," and "actual test material," so "the accused is clearly on notice as to what those terms mean." AR Tab 16 at 155. The Military Judge also found Plaintiff's argument that AFI 36-2605 violated his First Amendment right to freedom of speech and association without merit. AR Tab 16 at 155–56 ("The accused was free to associate with [other members of the Air Force]. However, he was not free to discuss and share test materials or suspected test materials, as defined by the AFI, with other examinees.").

The Judge Advocate reviewed the court-martial in an Article 64(a) review, and also declined to order any relief. AR Tab 3 at 3–10.

Plaintiff also raised the same arguments in the petition for a UCMJ Article 69(a) review or a new trial, pursuant to UCMJ Article 73. AR Tab 89 at 768–75. The Judge Advocate General declined to order relief on this ground. AR Tab 91 at 799 (Judge Advocate General's final

determination) ("I have determined that the findings . . . and the imposed sentence . . . are appropriate.  I find that there is no basis to grant a new trial[.]").  The Judge Advocate General's failure to identify these specific First Amendment claims in his determination does not indicate that he failed to fully and fairly consider them.  "When an issue has been briefed and argued before a military court, it has received full and fair consideration, even if that court disposes of the claim summarily with a statement that it did not consider the issue meritorious or requiring discussion." *Matias*, 19 Cl. Ct. at 646.  The court sees no reason why the same principle would not apply, when the Plaintiff's recourse is not to a military appellate court, but to the Judge Advocate General.

For these reasons, the court has determined that Plaintiff received full and fair consideration of whether AFI 36-2605 was void for vagueness, overbroad, or violated the First Amendment and Due Process clause of the Fifth Amendment.  Absent plain error, such that Plaintiff's Due Process was impaired, this court will not reweigh the determinations previously made in the court-martial proceedings.

### 2.    The Court-Martial Was Not Tainted By Prosecutorial Misconduct.

### a.    The Government's Argument.

The Government next argues that Plaintiff received full and fair consideration of the allegations of prosecutorial misconduct and, in any event, "cannot demonstrate constitutional error justifying collateral attack of his court-martial conviction."  Gov't Mot. at 17.  "A plaintiff in this court must make some showing, not merely an allegation, that the staff legal officer's fulfillment of his advisory functions led to unfairness or that the system is inherently unfair," and, in the absence of that showing, this court defers to the court-martial system to determine whether the Staff Judge Advocate's actions violated UCMJ Article 6(c).[21]  Gov't Mot. at 18 (quoting *Gross v. United States*, 531 F.2d 482, 490 (Ct. Cl. 1976)).  Although Plaintiff claims that the Staff Judge Advocate signed the charge sheet, coached the prosecution trial counsel, and therefore improperly advised the Convening Authority during the clemency request, "these allegations are not borne out by the facts," and Plaintiff's argument was fully and fairly considered.  Gov't Mot. at 18–19.

The Government explained that the Staff Judge Advocate "did not sign the charge sheet[] as part of the prosecution," because she "signed the portion of the charge sheet in her role as Staff Judge Advocate (1) to confirm receipt of the proposed charges by the Convening Authority and (2) to refer and serve the charges."  Gov't Mot at 19 (citing AR Tab 23 at 439–40 (1/20/09 charge sheet signed "FOR THE COMMANDER" with the "official capacity of officer signing" listed as "Staff Judge Advocate" in both receipt and referral blocks)).  The summary record of trial also does not evidence that she coached the prosecution, nor did Plaintiff's counsel object to her conduct during the court-martial proceeding.  Gov't Mot. at 19.  Instead, Plaintiff asserted for the first time in his clemency request that the Staff Judge Advocate "had attended several days of the trial, sat behind counsel, and passed notes to the prosecution during witness examinations" but

---

[21] UCMJ Article 6(c) provides, "No person who has acted as a member, military judge, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case."  10 U.S.C. § 806(c) (2006).

simultaneously stated that "no one is alleging any actual wrongdoing on [her] part[.]" Gov't Mot. at 19 (citing AR Tab 4 at 17–18).

In any event, Plaintiff has not shown any prejudice. The Staff Judge Advocate prepared information regarding the court-martial proceeding for the Convening Authority's review, but Plaintiff has not shown that she was actually, not just conceivably, biased. Gov't Mot. at 19–20 (citing *Gross*, 531 F.2d at 488–89). And, although Plaintiff asserts that the Staff Judge Advocate's actions may have created an appearance of unlawful command influence, Plaintiff failed to raise this issue in any prior proceeding or appeal. AR Tab 4 at 17–18; AR Tab 89. Therefore, Plaintiff has waived this argument. *See Martinez v. United States*, 914 F.2d 1486, 1488 (Fed. Cir. 1990); *Klingenschmitt v. United States,* 119 Fed. Cl. 163, 190–91 (Fed. Cl. 2014), *aff'd*, 623 F. App'x 1013 (Fed. Cir. 2015), *cert. denied*, 2016 WL 3078025 (U.S. Oct. 3, 2016).

### b.      Plaintiff's Response.

Plaintiff responds that the Staff Judge Advocate committed prosecutorial misconduct because, in this case, she "actually signed the convening authority's action on behalf of the Commander and forwarded the matter to the [C]onvening [A]uthority." Pl. Resp. at 18–19. In addition, the Staff Judge Advocate "made herself a prosecutor" by "providing adversarial advice to the Trial Counsel team." Pl. Resp. at 19. In the military justice system, a trial counsel may not later act as a Staff Judge Advocate to the Convening Authority. Pl. Resp. at 19 (citing *United States v. McCormick*, 34 M.J. 752, 756 (N-M.C.M.R. 1997)).

The Staff Judge Advocate's actions resulted in an unfair and partial court-martial, and evidenced unlawful command influence. Pl. Resp. at 20–21. Even if there was no actual unlawful command influence, "there may be a question whether the influence of command placed an intolerable strain on public perception of the military justice system." *United States v. Stoneman*, 57 M.J. 35, 42–43 (C.A.A.F. 2002) (quotation and citation omitted). Therefore, the appropriate remedy may include dismissal, even dismissal with prejudice. Pl. Resp. at 21–22. This is so, because the Staff Judge Advocate's actions are imputable to the Convening Authority and "[w]hen unlawful influence is directed against a defense counsel, it . . . 'affects adversely an accused's right to effective assistance of counsel.'" Pl. Resp. at 22 (citing *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986)).

And, Plaintiff did not waive this argument, because it may be raised for the first time on appeal. Pl. Resp. at 22 (citing *United States v. Blaylock*, 15 M.J. 190, 193 (C.M.A. 1983)). It is well established that "[m]ilitary courts have never allowed doctrines of waiver to prevent consideration of unlawful command influence." Pl. Resp. at 22. Although the military courts "will go to great lengths to ensure beyond a reasonable doubt that the decisions of the members were not tainted by illegal command influence[,] . . . there must be more than a mere appearance of evil to justify appellate action. . . . Prejudice is not presumed. The issue of unlawful command influence must be alleged with particularity and substantiation." *United States v. Reynolds*, 40 M.J. 198, 201–02 (C.M.A. 1994) (citations omitted).

### c.   The Government's Reply.

The Government replies that Plaintiff incorrectly argues the Staff Judge Advocate "actually signed the convening authority's action on behalf of the Commander and forwarded the matter to the convening authority." Gov't Reply at 12 (quoting Pl. Resp. at 18–19). To the extent Plaintiff is referring to the Staff Judge Advocate's signature on the referral of charges, AFI 51-201 ¶ 4.7.1 permits the Convening Authority to delegate authority to sign the referral block on the charge sheet to a judge advocate, who then signs the referral "FOR THE COMMANDER" and that is what the Staff Judge Advocate did in this case. AR Tab 23 at 440. The Staff Judge Advocate did not sign the Commander's action to execute the Action of the Convening Authority; instead, the Convening Authority executed that document. Gov't Reply at 12 (citing AR Tab 16 at 327).

In addition, the record does not support that the Staff Judge Advocate effectively acted as trial counsel. Gov't Reply at 13. Plaintiff never raised an objection to any "prosecutorial misconduct" during the special court-martial, and first raised the issue in his request for clemency, but therein Plaintiff stated that "no one is alleging any actual wrongdoing on the part of [the Staff Judge Advocate]." Gov't Reply at 13 (quoting AR Tab 4 at 17–18). In any event, the Convening Authority considered this issue when it was raised (AR Tab 4 at 11–12), and any potential prejudice was subject to review without action. Gov't Reply at 14 (citing *United States v. Dowty*, 60 M.J. 163, 173 (C.A.A.F. 2004) (holding there was no prejudice where the Convening Authority reviewed an action by the Staff Judge Advocate)).

Finally, Plaintiff's contention that an allegation of unlawful command influence may be raised for the first time on appeal is misplaced. Gov't Reply at 14. This is so, because Plaintiff never raised the issue to the Judge Advocate General, and the United States Court of Federal Claims "does not sit as an appellate court reviewing courts-martial." Gov't Reply at 14–15 (citing *Flute v. United States*, 535 F.2d 624, 626 (Ct. Cl. 1976)). Unlawful command influence cannot be raised for the first time in this court. *See Klingenschmitt*, 119 Fed Cl. at 190–91; *[N G] v. United States*, 94 Fed. Cl. 375, 388 (Fed. Cl. 2010) ("Assuming, *arguendo*, that plaintiff has shown facts constituting [unlawful] command influence, plaintiff failed to adduce them while arguing his case to the military. This is fatal to this position."). Plaintiff's speculation that the Staff Judge Advocate coached the prosecution and acted as trial counsel likewise was not raised in the clemency petition. Gov't Reply at 16. Therefore, Plaintiff waived this issue by failing to raise it in the military justice system. Gov't Reply at 16.

### d.   The Court's Resolution.

The Government contends that failure to raise unlawful command influence during the court-martial itself waives the issue on collateral attack. *See Klingenschmitt*, 119 Fed. Cl. at 190 (citing *Martinez*, 914 F.2d at 1488 (holding that "failure to raise his constitutional claims in the military court system bars him from raising them in federal court")). But, *Klingenschmitt* is not controlling, because that case concerned issues that were *never* raised during any of the military proceedings. *Id.* at 190 ("Of the several examples of alleged improper command influence set forth in his brief, however, only one . . . was raised before the court-martial. . . . The other objections . . . were not raised and are therefore waived."). The United States Court of Appeals for the Federal Circuit affirmed *Klingenschmitt* in a nonprecedential, unpublished decision, without a written opinion. And, *Martinez*, on which the United States Court of Federal Claims's

holding in *Klingenschmitt* relies, only concerns arguments that a plaintiff has failed to raise *at all* in the military court system. *See Martinez*, 914 F.2d at 1488 ("This case squarely presents the issue 'whether a plaintiff seeking to collaterally attack a court-martial conviction on constitutional grounds may have waived his constitutional claims by failing to raise them *at all* in the military justice system.' . . . Absent a showing of good cause and prejudice, [such failure] bars him from raising them in federal court.") (emphasis added).

In this case, Plaintiff did not fail to raise the issue of unlawful command influence in the military court system; it first was raised in the request for clemency, and again in the petition for the Judge Advocate General's review. Thus, neither *Klingenschmitt* nor *Martinez* is relevant to whether Plaintiff's unlawful command influence argument is waived.

In this case, the relevant military court precedent provides that Plaintiff was not required to raise his unlawful command influence argument during the court-martial proceeding. *See Blaylock*, 15 M.J. at 193 ("The failure of appellant's defense counsel to contest at trial the manner in which the charges were referred does not preclude appellant from raising this issue on appeal. In view of the policy clearly stated in [UCMJ] Article 37, we have never allowed doctrines of waiver to prevent our considering claims of improper command control.") (citation omitted). Therefore, Plaintiff was permitted to raise unlawful command influence for the first time in the review proceedings following the special court-martial, and he did so.

Therefore, the court has determined that Plaintiff's argument regarding unlawful command influence is not waived, for the purposes of this collateral attack. Therefore, the court turns to whether that issue received full and fair consideration in the military justice system.

The Convening Authority and the Judge Advocate General also reviewed the same argument Plaintiff makes now and both found it without merit. "When an issue has been briefed and argued before a military court, it has received full and fair consideration, even if that court disposes of the claim summarily with a statement that it did not consider the issue meritorious or requiring discussion." *Matias*, 19 Cl. Ct. at 646. Nor has Plaintiff demonstrated that the Staff Judge Advocate exerted any unlawful command influence, so that prior determinations were erroneous. In short, the court does not presume prejudicial effect from the fact that the Staff Judge Advocate held multiple roles. *See Gross*, 531 F.2d at 489 ("[W]e would not assume unfairness or prejudice to a court-martial defendant from the mere existence of a legislative system giving the convening authority multiple roles[.] . . . The reasons for our refusal to assume prejudicial effect are stronger in this case, where plaintiff has challenged not the convening authority's position but that of the staff legal officer[.]"). And, the Administrative Record does not demonstrate that the Staff Judge Advocate acted in any way contrary to the scope of her authority or duties. "[W]ithout far greater proof than plaintiff has proffered, we cannot invalidate a conviction where all requirements of a statutory system carefully devised by Congress and approved generally by the Supreme Court were met." *Id.*

### 3. The Military Judge's Remedy For The Alleged Coaching Of Staff Sergeant A Was Not In Error.

#### a. The Government's Argument.

The Government argues that the court-martial judge fully and fairly considered Plaintiff's argument that Staff Sergeant A was coached and that argument was raised and considered in each subsequent review. Gov't Mot. at 21. The appropriate remedy for improper witness coaching is permitting opposing counsel to cross-examine the witness in front of the jury. *See Geders v. United States*, 425 U.S. 80, 89 (1976) ("[O]pposing counsel in the adversary system is not without weapons to cope with 'coached' witnesses[,]" because counsel may cross-examine a witness "as to the extent of any 'coaching' during a recess, subject, of course, to the control of the court."); *Rhynes v. United States*, 218 F.3d 310, 320 (4th Cir. 2000) (same). Therefore, the Military Judge's refusal to grant a mistrial was not erroneous. Gov't Mot. at 21. In this case, because the Military Judge permitted Plaintiff's counsel to cross-examine Staff Sergeant A regarding the extent of any purported coaching. Gov't Mot. at 21 (citing AR Tab 16 at 264–65).

In addition, no sequestration order prohibited counsel from conferring with a witness during a recess, nor is there any such general prohibition. Gov't Mot. at 21 (citing *United States v. Rodriguez-Rivera*, 60 M.J. 843, 847 (N-M. Ct. Crim. App. 2005) ("Without an explicit instruction from the [M]ilitary [J]udge, the trial counsel were not prohibited either by [MRE] 615 or case law from discussing the [witness's] testimony with her during recess."), *aff'd on this ground*, *rev'd on other grounds*, 63 M.J. 372, 378–79 (C.A.A.F. 2006)). And, even if there had been a sequestration order, cross-examination remedied any potential error. Gov't Mot. at 22. Therefore, declaring a mistrial or striking the testimony was not required. Gov't Mot. at 22 (citing LAFAVE, CRIM. PROC. § 24.4(d) (4th ed. 2015) ("When the violation of a sequestration order is indicated during or before trial (*e.g.*, a witness . . . discusses evidence with another witness before testifying), courts have discretion to choose from among several remedies. Mistrial is rarely ordered.") (footnotes omitted)).

Again, Plaintiff raised this issue on appeal to the Judge Advocate General. AR Tab 89 at 778–79. By doing so at this juncture, Plaintiff "simply seeks to relitigate an evidentiary issue resolved in the military justice system." Gov't Mot. at 22 (citing *Matias*, 19 Cl. Ct. at 644 ("Plaintiff is again asking this court to reweigh the evidentiary findings of the military courts with the hope that this [c]ourt will substitute its judgment for that of the trial court—a request that is clearly beyond the limited review allowed in this [c]ourt.")).

#### b. Plaintiff's Response.

Plaintiff responds that Staff Sergeant A was taken aside during a break in her testimony and coached to correct her prior testimony. Pl. Resp. at 22–23 (citing AR Tab 16 at 263–65). Therefore, the Military Judge's denial of Plaintiff's motion for a mistrial was clear, not harmless, error. Pl. Resp. at 23 (citing *United States v. Shabazz*, 52 M.J. 585, 594 (N-M. Ct. Crim. App. 1999) (holding that allowing testimony given by video teleconference was clear error, where the video made it obvious the witness was being coached)).

### c.      The Government's Reply.

The Government replies that the cross-examination of Staff Sergeant A about coaching during a break in her testimony was sufficient to remedy any prejudice, and in any event, the Judge Advocate General considered the issue on appeal.  Gov't Reply at 16.  As such, Plaintiff has failed to identify any constitutional violation or any denial of a full and fair opportunity to present his concerns in the military justice system.  Gov't Reply at 17.  Thus, Plaintiff "simply seeks to relitigate an evidentiary issue resolved in the military justice system."  Gov't Reply at 17 (citing *Matias*, 19 Cl. Ct. at 644 ("Plaintiff is again asking this [c]ourt to reweigh the evidentiary findings of the military courts with the hope that this [c]ourt will substitute its judgment for that of the trial court—a request that is clearly beyond the limited review allowed in this [c]ourt.")).

### d.      The Court's Resolution.

Plaintiff raised the same arguments about alleged witness coaching in a motion for mistrial and petition for a UCMJ Article 69(a) review or alternatively, a new trial, pursuant to UCMJ Article 73.  AR Tab 89 at 778–79.  The Military Judge permitted cross-examination on the extent of any purported coaching and, after hearing an argument for mistrial, denied the motion.  AR Tab 16 at 263.  This was an appropriate remedy for any alleged coaching.  *See Geders*, 425 U.S. at 89– 90 ("[Counsel] may cross-examine a [witness] as to the extent of any 'coaching' during a recess . . . .  Skillful cross-examination could develop a record as to the [witness's] credibility, if it developed that . . . counsel had in fact coached the witness as to how to respond on the remaining direct examination and on cross-examination.").  The Judge Advocate General also declined to declare a mistrial.  AR Tab 91 at 799 (Judge Advocate General's final determination) ("I have determined that the findings . . . and the imposed sentence . . . are appropriate.  I find that there is no basis to grant a new trial[.]").  Therefore, this issue received full and fair consideration.  *See Matias*, 19 Cl. Ct. at 646.

Plaintiff has cited no authority for the proposition that the cross-examination was insufficient to remedy any coaching.  Nor has Plaintiff demonstrated that the court-martial proceedings on this issue or during any subsequent review were fundamentally unfair.  *See Bowling*, 713 F.2d at 1561.  Absent plain error, such that Plaintiff's Due Process was impaired, it is not for this court to reweigh the determinations previously made in the military proceedings.  *See id.* at 1562.

### 4.      The Military Judge's Ruling That Video Evidence Should Not Be Suppressed Was Not In Error.

### a.      The Government's Argument.

The Government argues that Plaintiff also received full and fair consideration of the request to suppress a video recording between Plaintiff and Technical Sergeant B, that was also raised and rejected on review.  Gov't Mot. at 23.  Plaintiff may not collaterally attack the Military Judge's determination regarding this evidentiary issue.  *See Bowling*, 713 F.2d at 1561–62 ("[Suppression of evidence obtained by an allegedly impartial officer is] a question of factual inquiry which the military trial and appellate courts all resolved against plaintiff after his counsel had been afforded every reasonable opportunity to establish partiality.").

The new objection Plaintiff now raises—that the recording includes a request for counsel that is inadmissible—was never presented during the court-martial. Gov't Mot. at 23. At that proceeding, Plaintiff objected to the recording, based on hearsay and MRE 404(b), arguing it was inadmissible character evidence. Gov't Mot. at 23–24; *see also* AR Tab 16 at 151, 225–27. Only on appeal to the Judge Advocate General and now, on collateral attack, does Plaintiff object to the evidence based on MRE 301(f)(3).[22] Gov't Mot. at 23. Because Plaintiff failed to raise an objection based on MRE 301(f)(3) during the special court-martial proceeding, the issue of suppression is untimely and waived. *See United States v. Finch*, 64 M.J. 118, 122 (C.A.A.F. 2006) ("Failure to object at trial constitutes waiver of that issue. When an objection is waived at trial, it can only be reviewed by establishing plain error."); *see also Martinez*, 914 F.2d at 1488 (holding a failure to raise an objection in the military system waives that objection on collateral attack). Moreover, even if there is some evidence in the record that may support suppression, that objection was not preserved. *See Martinez*, 914 F.2d at 1489 ("[T]hat some of the evidence allegedly supporting . . . [a] claim . . . overlaps evidence supporting different claims that [Plaintiff] did raise before the Court of Military Review . . . is not sufficient to preserve his [new] claim in this collateral proceeding.").

Even if the court concludes that the argument is not waived, Plaintiff has failed to show any "prejudicial constitutional violation that rendered his court martial a 'trial by ordeal.'" Gov't Mot. at 23 (internal quotation marks omitted). MRE 301(f)(3), and the privilege against self-incrimination under the Fifth Amendment to the United States Constitution, "do not prohibit the prosecution from offering testimony of a defendant's invocation of a lawyer in all circumstances." Gov't Mot. at 25; *see also* AR Tab 16 at 204–05. But because the videotaped conversation evidenced a joint motive to retain an attorney for the purposes of obstructing the investigation and MRE 404(b) permits the admission of evidence to show course of conduct, admitting that evidence does not invoke constitutional issues. Gov't Mot. at 25; *see also United States v. Reeves*, 61 M.J. 108, 110 (C.A.A.F. 2005) ("[O]ne who advises, with a corrupt motive, that a witness exercise a constitutional right or privilege may obstruct the administration of justice.").

**b.    Plaintiff's Response.**

Plaintiff responds that admitting the video recording was error, and that the military judge improperly denied Plaintiff's motion for a mistrial. Pl. Resp. at 23. This is so, because the evidence concerned uncharged misconduct, and was admitted, pursuant to MRE 404(b), "to show consciousness of guilt in that the accused and [Technical Sergeant B] were obstructing justice by stating that they would not make a statement [during the OSI investigation] and that they would 'lawyer up.'" Pl. Resp. at 23; AR Tab 16 at 205–06. Such evidence is admissible under MRE 404(b), however, only if it satisfies a three-part test. Pl. Resp. at 23–24 (citing *Reynolds*, 29 M.J. at 109). Evidence is admissible only if the court balances: (1) whether the evidence reasonably supports a finding that the accused committed prior offenses; (2) whether the evidence is relevant, *i.e.*, a fact of consequence is made more or less probable by the existence of the evidence; and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair

---

[22] That rule provides, "[w]hen the accused does not testify at trial, defense counsel may request that the members of the court be instructed to disregard that fact and not to draw any adverse inference from it." MRE 301(f)(3); *see also infra* note 23.

prejudice. *Reynolds*, 29 M.J. at 109. In this case, the military judge did not consider each of these elements or conduct any balancing. Pl. Resp. at 24.

In addition, invoking the right to remain silent and to counsel neither impedes nor obstructs an investigation. Pl. Resp. at 24. An agreement to do lawful acts does not amount to obstruction of justice and, in any event, the observation that "everyone should keep quiet and request an attorney" originated with Technical Sergeant B, not with Plaintiff, so the evidence does not demonstrate Plaintiff's alleged consciousness of guilt. Pl. Resp. at 24. Therefore, it cannot be a prior crime or bad act that falls within MRE 404(b). Plaintiff further contends that the conversation was invoking his right to counsel and to remain silent, and therefore "any reference to the fact that an accused exercised [these rights]" is error. Pl. Resp. at 25 (citing *United States v. Nees*, 39 C.M.R. 29, 33 (C.M.A. 1968) ("We need not decide the question of prejudice [resulting from the admission of the accused's invocation of the right to counsel, based on the court's ruling on another issue]. Error, however, is clearly apparent.")). The "obvious intent" of the recorded conversation was to retain an attorney to ascertain the nature of the allegations and potential adverse evidence. Pl. Resp. at 26. Technical Sergeant B had an interest in ascertaining this information, but that interest cannot be imputed to Plaintiff. Pl. Resp. at 26–27.

In any event, Plaintiff was not charged with obstruction of justice, therefore admitting evidence suggesting obstruction of justice is an "error of [c]onstitutional proportions." Pl. Resp. at 27. Failure to raise such plain error in the trial court does not render the argument waived, because rulings that "seriously affect the fairness, integrity or public reputation of judicial proceedings" always have been considered plain error. *United States v. Atkinson*, 297 U.S. 157, 160 (1936). But, if the court concludes that admitting the video evidence was not plain error in this case, it is still "a violation of military due process, which in itself constitutes a violation of the Fifth Amendment right to due process." Pl. Resp. at 28. This is so, because members of the military are granted additional substantive and procedural rights via the MANUAL FOR COURTS-MARTIAL. *See United States v. Forbes*, 59 M.J. 934, 941 (N-M. Ct. Crim. App. 2004), *aff'd*, 61 M.J. 354 (C.A.A.F. 2005).

### c.     The Government's Reply.

The Government responds that Plaintiff never objected to the video evidence on the basis of MRE 404(b) during the special court-martial proceeding. Instead, Plaintiff objected based on MRE 317 (AR Tab 34), then on the basis of relevance, hearsay, and cumulativeness (AR Tab 16 at 159–60). Plaintiff's objections were sustained, but the Military Judge stated that the evidence may later be admissible as character evidence. AR Tab 16 at 159–60. When the prosecution later sought to introduce the evidence, Plaintiff objected, not because it was inadmissible under MRE 404, but on grounds of hearsay, bolstering the witness, and cumulativeness; the Military Judge overruled those objections. AR Tab 16 at 225–27. Plaintiff first raised the objection based on MRE 404(b) during appeal to the Judge Advocate General. AR Tab 89 at 779–81.

Because Plaintiff did not object on MRE 404 grounds during the special court-martial proceeding, the military judge was not required to conduct the analysis required by *Reynolds*. Gov't Reply at 19 (citing *United States v. Forbes*, 61 M.J. 354, 358 (C.A.A.F. 2005)). And, the failure previously to object, based on MRE 404(b), precludes collateral attack on the issue. Gov't Reply at 19–20 (citing *Martinez*, 914 F.2d at 1488–89).

In addition, any objection on the basis of MRE 301(f)(3) is waived, because it was first raised in Plaintiff's appeal to the Judge Advocate General. Gov't Reply at 23 (citing AR Tab 89 at 779–81). In any event, even if that objection is not waived, the Military Judge did not err, because military courts have recognized that "otherwise lawful advice" made under the guise of corrupt, dishonest, or self-serving motives can constitute wrongful conduct that obstructs justice. Gov't Reply at 24 (citing *United States v. Culbertson*, 65 M.J. 587, 591 (N-M. Ct. Crim. App. 2007)). Therefore, the admission of the video was not plain error. *See Bowling*, 713 F.2d at 1561–62.

### d.    The Court's Resolution.

As the court previously determined, *Klingenschmitt* and *Martinez* are not determinative of whether an argument not raised during a court-martial, but subsequently raised, is waived. The Military Rules of Evidence provide that

> [e]rror may not be predicated upon a ruling which admits or excludes evidence unless the ruling materially prejudices a substantial right of a party and . . . in case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

MRE 103(a)(1).

Therefore, failure to make a specific objection "may waive the objection for purposes of both trial and appeal." U.S. DEP'T OF DEF., MANUAL FOR COURTS-MARTIAL, Appendix, at A22-2 (2008) (Analysis of the Military Rules of Evidence). Rulings regarding constitutional issues, however, are subject to more stringent standards, such as the harmless error and plain error doctrines. *Id.*

The Military Judge in this case initially excluded the video evidence on hearsay grounds, but stated in her ruling that later, based on additional evidence, it may be admissible for other purposes. AR Tab 16 at 159–60, 225–26. On that occasion, however, Plaintiff's counsel did not object because the video evidence demonstrated an intent to invoke Plaintiff's right to counsel, or contravene the Fifth Amendment *Miranda* protections. Nor did Plaintiff's counsel object, based on MRE 404(b).[23] But, the Administrative Record shows that Plaintiff raised these objections to Technical Sergeant B's testimony. AR Tab 16 at 204–06. But that objection did not preserve the Military Judge's ruling on the video for appeal. Failure to object on these grounds waives the

---

[23] MRE 404(b) provides that

> [e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[] [but] [t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

MRE 404(b)(1)–(2).

objection, absent plain error.  In addition, the Military Judge admitted the video evidence for the purpose of corroborating testimony by Technical Sergeant B about the telephone conversation, not for the purposes of showing consciousness of guilt or uncharged misconduct.  AR Tab 16 at 227. In addition, the Military Judge provided a limiting instruction to the special court-martial members that they were to consider the video only for the purpose of corroboration, not for the truth of the matter asserted.  AR Tab 16 at 227.  As such, the Military Judge's ruling was not plain error.

Nor can the court conclude that the Military Judge's failure to order relief, based on Plaintiff's prior arguments concerning exclusion of the video evidence, under MRE 301(f)(2),[24] was plain error.  MRE 301(f)(2) provides that

> [t]he fact that the accused[,] during official questioning and in exercise of rights under the Fifth Amendment to the United States Constitution or Article 31 remained silent, refused to answer a certain question, requested counsel, or requested that questioning be terminated, is not admissible against the accused.

MRE 301(f)(2).

Plaintiff's argument regarding MRE 301(f)(2) and *Miranda* are misplaced, because those protections apply in the context of a custodial interrogation; in this case, there was no custodial interrogation in which Plaintiff or Technical Sergeant B invoked their Fifth Amendment right to counsel.

For these reasons, the court has determined that Plaintiff's counsel waived any objection to the video evidence under MRE 404(b) and 301(f)(2), and, in any event, the Military Judge's ruling on that evidence was not plain error.

### 5.   The Military Judge's Ruling Not To Dismiss The Members Venire And Empanel A New Venire Or Order A New Trial Was Not In Error.

#### a.   The Government's Argument.

The Government argues that the court generally does not re-weigh the empaneling of the members venire of a court-martial proceeding.  Gov't Mot. at 26 (citing *Reed v. United States*, 23 Cl. Ct. 517, 524 (Cl. Ct. 1991) ("The [M]ilitary [J]udge determined that there was no evidence of [impropriety in the empaneling].  The convening authority also considered the issue, as did the [reviewing court]. . . . Since plaintiff received full and fair consideration of this issue . . . the court finds no reason to set aside plaintiff's court martial in this regard.")).  Even if members discussed the case prior to deliberation, then dismissal is sufficient to remove any prejudice, so Plaintiff was not deprived of constitutional due process.  Gov't Mot. at 26.

---

[24] The October 22, 2015 Complaint cites MRE 301(f)(3) (Compl. ¶ 62), but Plaintiff's Response To The Government's Motion For Judgment On The Administrative Record quotes language from MRE 301(f)(2) (Pl. Resp. at 24–25).  The court considers MRE 301(f)(2) as the relevant evidentiary rule.

In addition, Plaintiff waived any argument regarding the pre-deliberation discussions, because he failed to object or seek a mistrial on that basis during the special court-martial proceeding.  Gov't Mot. at 26.  The Government contends that Plaintiff first argued that the members venire was improper on appeal to the Judge Advocate General.  Gov't Mot. at 27; AR Tab 89 at 781–82.

Even if not waived, Plaintiff's argument lacks merit, because upon learning during voir dire that some of the potential members venire discussed the case, the Military Judge's actions in instructing members not to discuss the case prior to deliberations and dismissing those members remedied any prejudice that may have been created.  Gov't Mot. at 27 (citing AR Tab 16 at 167–69).  Moreover, Plaintiff's trial counsel objected to the dismissal of two members.  AR Tab 16 at 171–74.  Therefore, Plaintiff has not demonstrated any constitutional violation to justify collateral attack.  Gov't Mot. at 27.

### b.      Plaintiff's Response.

Plaintiff's counsel became aware during voir dire that the potential members venire discussed the merits of the case, and this was prejudicial.  Pl. Resp. at 29 (citing *Remmer v. United States*, 347 U.S. 227, 229 (1954)).  The challenge to Lt. Col. X "seemed to have a disquieting effect on the remaining members" and signaled to the remaining members venire that they "were expected to find that the [WAPS testing] system was fair."  Pl. Resp. at 29; *see also* AR Tab 16 at 172.  The Military Judge's failure to discharge all members of the venire and order a new venire "tainted" the special court-martial and the conviction and sentence should be set aside.  Pl. Resp. at 29.

### c.      The Government's Reply.

The Government replies that this argument is waived, because Plaintiff "never sought a mistrial during the court-martial based on the removal of members engaged in pre-deliberation discussions."  Gov't Reply at 26 (citing AR Tab 16 at 167–74).  The Military Judge's remedy that "assured there would be an unbiased venire," did not give rise to and cured any potential constitutional violation.  Gov't Reply at 28.

### d.      The Court's Resolution.

As discussed previously, *Klingenschmitt* and *Martinez* are not dispositive, where the plaintiff raises an issue after the court-martial, but prior to collateral attack.  Rule for Courts-Martial ("RCM") 915 provides that, on motion for a mistrial or "when it otherwise appears that grounds for a mistrial exist," the Military Judge may, "as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings."  RCM 915.

In the military justice system, failure to move for a mistrial waives or forfeits the issue from being raised on appeal.  *See United States v. Jones*, 2009 WL 3467495 at *4–*5 (N-M. Ct. Crim. App. Oct. 29, 2009) ("Where, as here, there is no formal request for a mistrial, we must consider first whether the [trial counsel] waived or forfeited the issue at trial.").  Waiver is the knowing decision not to exert a particular right or privilege, whereas forfeiture is the failure to

timely raise the issue. *Id.* at *5. Military courts review forfeited issues for plain error, whereas they do not review waived issues at all, "because a valid waiver leaves no error for [them] to correct on appeal." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009).

Plaintiff's counsel, however, did not object to the empaneling, nor did he move for a mistrial on that basis. Plaintiff's counsel objected only when the prosecution challenged Lt. Col. X for cause and that motion was denied, thereby preserving the issue whether the Military Judge erroneously denied the challenge, but not the issue of mistrial. *See Jones*, 2009 WL 3467495 at *2. Instead, Plaintiff's counsel raised the issue of mistrial in the petition for an Article 69(b) review or new trial under Article 73—two years after the court-martial concluded.

The court need not determine whether mistrial was waived or forfeited, because the outcome is the same in either case. If the issue was waived, then the military's inability to review the issue means there is no issue that can be collaterally attacked. *Campos*, 67 M.J. at 332 ("[A] valid waiver leaves no error . . . to correct on appeal"); *see also Martinez*, 914 F.2d at 1488–89 (waiving an issue in the military system bars a plaintiff from collaterally attacking the issue in federal court). And, the failure to move for a mistrial is "strong evidence" against finding there was a basis on which to declare a mistrial. *Cf. United States v. Palmiter*, 20 M.J. 90, 97 (C.M.A. 1985) (failing to raise issue of illegal confinement was strong evidence that the confinement was not illegal); *United States v. Norment*, 36 M.J. 1156, 1160 (A.C.M.R. 1993) (failure to raise member inattentiveness during court-martial was strong evidence that no member was inattentive or asleep during trial).

In the alternative, even if the issue was forfeited, in this case, the record does not demonstrate plain error. The Military Judge did not *sua sponte* consider whether to declare a mistrial, indicating that it was not "manifestly necessary in the interest of justice." RCM 915. As such, the court is not inclined to question the Military Judge's actions in empaneling the venire. *See Reed v. United States*, 23 Cl. Ct. at 524. For example, the court cannot conclude that requiring counsel to use a peremptory challenge rather than one for cause sent any prejudicial message to the rest of the venire. Rather than amounting to plain error, the Military Judge's actions ensured that an impartial venire was empaneled, thereby preserving one of the basic protections of due process in a criminal proceeding. "[A]part from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten . . . that the proceeding is more a spectacle . . . or trial by ordeal." *Augenblick*, 393 U.S. at 356 (citations omitted). In this case, the Military Judge's rulings did not evidence plain error.

Plaintiff's counsel also briefed and argued this issue before the Judge Advocate General. Therefore, even if the issue of mistrial was not waived, the court has determined that it was fully and fairly considered by the Judge Advocate General, and was found to be without merit. *See Matias*, 19 Cl. Ct. at 646.

6.    The "Cumulative Error Doctrine" Does Not Require That Plaintiff's Conviction Be Set Aside And A New Trial Ordered.

a.    The Government's Argument.

The cumulative error doctrine provides that "a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding." *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011) (quoting *United States v. Banks*, 36 M.J. 150, 170–71 (C.M.A. 1992)). Plaintiff "cannot demonstrate any error from the special court-martial, much less multiple plain errors that would justify invoking this doctrine." Gov't Mot. at 28 (citing *Razik v. United States*, 525 F.2d 1028, 1035 (Ct. Cl. 1975) ("As the court could find no merit on individual consideration of plaintiff's preceding five specifications of procedural error, this last catch-all cumulative error argument must likewise be dismissed as meritless.")). And, even if there were any errors, they pertained to factual findings that cannot be challenged on collateral attack. *See Bowling*, 713 F.2d at 1561 ("Our own precedents hold that questions of fact resolved by military courts cannot be collaterally attacked."). In addition, the Judge Advocate General considered this argument in conjunction with new post-trial evidence, and granted limited relief on that basis. Gov't Mot. at 28; *see also* AR Tab 91 at 799.

Therefore, there is no basis for Plaintiff's counsel's request to set aside Plaintiff's conviction and a new trial be ordered.

b.    Plaintiff's Response.

Plaintiff's counsel responds that Plaintiff's conviction and sentence must be set aside, because the cumulative errors "touch every specification" of the charges and raise the question of whether Plaintiff was afforded a fair trial. Pl. Resp. at 30. The cumulative error doctrine requires the court to review the totality of the case. *See Kotteakos v. United States*, 328 U.S. 750, 757 (1946). And, the United States Court of Appeals for the Armed Forces has reversed convictions where the court could not "say with any certainty that the cumulative effect of these errors did not affect the outcome of [the] case." *United States v. Dollente*, 45 M.J. 234, 243 (C.A.A.F. 1996). In effect, the court must make a "gut call" whether the trial was fair, and if the court reasonably questions the trial's fairness, the conviction must be set aside. Pl. Resp. at 31.

c.    The Government's Reply.

The Government adds only that Plaintiff's assertion that the court should make a "gut call" misstates the court's scope of review. Gov't Reply at 29. Instead, the court must determine "whether the court-martial was so unfair that it constituted a trial by ordeal (not, merely, unfair)." Gov't Reply at 29 (citing *Augenblick*, 393 U.S. at 356; *Flute*, 535 F.2d at 626).

d.    The Court's Resolution.

The court has carefully reviewed each of the issues raised on collateral attack and has determined that none meets the standard set forth in *Augenblick*, *i.e.*, Plaintiff has not demonstrated convincingly that his court-martial proceedings so deprived him of fundamental fairness as to impair due process. *See Bowling*, 713 F.2d at 1561 (citing *Augenblick*, 393 U.S. at 356). As the United States Supreme Court has held,

the military . . . have heard [Plaintiff] out on every significant allegation which they now urge.  Accordingly, it is not the duty of the civil courts simply to repeat that process—to reexamine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of [Plaintiff's] allegations . . . It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims.

*Burns*, 346 U.S. at 144.

In this case, all of the significant allegations were raised during the military's review, or were waived.  Plaintiff's due process rights were not violated at any stage of the court martial proceedings, nor has Plaintiff demonstrated any individual errors.  Accordingly, the court has determined that the cumulative error doctrine is not implicated in this case.  *Cf. Razik*, 525 F.2d at 1035 ("As the court could find no merit on individual consideration of plaintiff's preceding five specifications of procedural error, this last catch-all cumulative error argument must likewise be dismissed as meritless.").[25]  Nor did Plaintiff's court-martial amount to a trial by ordeal.  *See Augenblick*, 393 U.S. at 356.

### 7.    Plaintiff's Reinstatement Request Is Not Justiciable.

#### a.    The Government's Argument.

The Government argues that Plaintiffs request for reinstatement to a grade of E-7, with corresponding retirement benefits, "presents a non-justiciable question because [Plaintiff] was retired due to disability prior to the date he would have qualified for these benefits and his enlistment contract expired prior to the date" Plaintiff would have been eligible for such benefits.  Gov't Mot. at 28–29.  Military routine personnel decisions are non-justiciable and non-reviewable.  *See Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988).  Plaintiff has no right to enlist or reenlist in the Air Force, without a statutory grant of such right.  *See Dodson v. United States*, 988 F.2d 1199, 1203–04 (Fed. Cir. 1993).  Because Plaintiff, in this case, was discharged, he may not recover pay or benefits beyond the term of his enlistment.  *See Thomas v. United States*, 42 Fed. Cl. 449, 453 (Fed. Cl. 1998) ("A servicemen who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would have otherwise expired."), *aff'd*, 217 F.3d 854 (Fed. Cir. 1999) (unpub. tbl. dec.).

Plaintiff was retired for disability after having served in the Air Force for 21 years and 23 days.  Compl. ¶ 35; *see also* Gov't App. at 5 ("Effective 27 Oct 09 you are permanently disability retired in the grade of SSG per AFI 36-3212 and SAF Memo dated 13 Aug 09, with compensable percentage for disability of 040 percent.").  The Government contends that Plaintiff is eligible for E-7 retirement benefits, only if he retired after 24 years of service, which he did not.  Gov't Mot. at 29.

---

[25] The United States Court of Appeals for the Federal Circuit has held that United States Court of Claims decisions issued prior to September 30, 1982, are binding precedent.  *See S. Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982).

In any event, Plaintiff's term of service would have expired before he had served 24 years, because his enlistment contract ended March 16, 2010. Gov't Mot. at 30 (citing Gov't App. at 20). When the enlistment contract ended, Plaintiff still would need to serve an additional two and a half years to be eligible to retire as an E-7, and this court cannot order relief beyond the expiration of that enlistment contract. Gov't Mot. at 30 (citing *Voge*, 844 F.2d at 780 (addressing justiciability of military personnel decisions); *Maier v. Orr*, 754 F.2d 973, 983 (Fed. Cir. 1985) ("Federal courts have uniformly declined to order promotions, . . . and to order relief beyond a current enlistment[.]") (internal citations omitted)).

### b.      Plaintiff's Response.

Plaintiff argues that the Government misconstrues the high year tenure policy with statutory eligibility for retirement from the Air Force. Pl. Resp. at 8. The high year tenure policy concerns the "maximum date an Airman may remain on active duty, based on grade and years of service, as determined by the Secretary of the Air Force." AFI 36-2606, Attachment 1 (Glossary of References and Supporting Information). Thus, the reinstatement request is justiciable, because if Plaintiff had not been forcibly retired as an E-5 as a result of the court-martial sentence, Plaintiff could have remained on active duty as an E-7 until at least twenty-four years of service. Pl. Resp. at 8. The reduction in grade, in effect, forcibly retired Plaintiff at the grade of E-5. Pl. Resp. at 8.

### c.      The Government's Reply.

The Government agrees that it incorrectly stated that Plaintiff would have to have served for 24 years to retire as an E-7, nevertheless Plaintiff was retired based on disability with 21 years and 23 days of service. Gov't Reply at 29. Plaintiff cannot receive back pay beyond the date he retired. *See Groves v. United States*, 47 F.3d 1140, 1145 (Fed. Cir. 1995) ("He is entitled to constructive active duty credit, with all corresponding back pay and allowances, for as long as he retained this status—that is, until this active duty status ended as a result of some action releasing him from active duty."); *see also Barnick v. United States*, 591 F.3d 1372, 1379–80 (Fed. Cir. 2010) (refusing to provide pay beyond the date a service member would have been "found unfit for duty due to physical disability, and either retired or discharged").

### d.      The Court's Resolution.

"A controversy is justiciable only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Voge*, 844 F.2d at 780 (citations and internal quotation marks omitted). As the United States Court of Appeals for the Federal Circuit has stated, "no one has a right to enlist or reenlist in the armed forces, unless specially given one by statute or regulations," and "judges do not run the [military]." *Dodson*, 988 F.2d at 1203–04; *see also Maier*, 754 F.2d at 980 ("No one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military.").

Plaintiff's request for reinstatement to active duty in the grade of E-7, retroactive to his separation date, "incident to the monetary claim" (Compl. at 14), apparently relies on the Tucker Act's provision that,

> [t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491(a)(2) (2012).

But, the court has determined that there is no basis to grant relief for any of Plaintiff's other claims. Plaintiff is effectively asking this court to second guess the sentence decided by the special court-martial members, something for which there are no "tests or standards [it] can soundly administer within [its] special field of competence." *Voge*, 844 F.2d at 780.

In any event, Plaintiff's retirement is a collateral consequence of his special court-martial conviction, because he was sentenced to a reduction in grade to E-5, and therefore reached the high-year tenure for that grade. But, "[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments," and "the ultimate responsibility for these decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). Routine military personnel decisions are not justiciable, even if they are collateral consequences from other, challenged proceedings. *Voge*, 844 F.2d at 780; *cf. Turner v. Egan*, 358 F. Supp. 560, 563 (D. Alaska), *aff'd*, 414 U.S. 1105 (holding forced retirement of officers after specified number of years of military service was not justiciable).

For these reasons, the court has determined that Plaintiff's reinstatement request is not justiciable.

## IV.   CONCLUSION.

For these reasons, the Government's October 21, 2016 Motion For Judgment On The Administrative Record is granted, and Plaintiff's February 21, 2017 Cross-Motion For Judgment On The Administrative Record is denied.

Accordingly, the clerk of the court for the United States Court of Federal Claims is directed to enter judgment dismissing Plaintiff's Complaint.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**